**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| CLIFFORD THOMPSON, #274805, ) | |
| ) | CIVIL ACTION NO. 3:08-2794-HMH-JRM |
| Petitioner, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| JON OZMINT, SC ) | |
| Department of Corrections; ) | |
| WARDEN OF BROAD RIVER ) | |
| CORRECTIONAL INSTITUTION, ) | |
| ) | |
| Respondents. ) | |
| _____) | |

Petitioner, Clifford Thompson ("Thompson"), is an inmate with the South Carolina Department of Corrections serving a twenty-five (25) year sentence for armed robbery and kidnapping. He filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 8, 2008. Respondents filed a return and motion for summary judgment on December 12, 2008. Because Hardin is *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on December 15, 2008 explaining to him his responsibility to respond to the motion for summary judgment. Thompson filed his response ("Traverse") to the Respondents' motion on March 2, 2009.

**Background and Procedural History**

The facts relating to Thompson's crime spree and arrests are not entirely clear from the record. Neither Petitioner nor Respondents provide a precise summary. The record shows that the

1

factual recitation given by the Solicitor at the plea hearing (App. 30-34) contains chronological inaccuracies. The transcript, indictments, and sentencing sheets show the following motel armed robberies and kidnappings:

| Date | County | Motel |
|---|---|---|
| 8/27/98 | Richland | Days Inn |
| 9/21/98 | Richland | Days Inn |
| 10/12/98 | Richland | Sleep Inn |
| 11/11/98 | Lexington | Sleep Inn |
| 2/28/00 | Berkeley | Sleep Inn |
| 3/27/00 | Charleston | Sleep Inn |

It appears that Chadwick Cooper and Thompson committed the first four of these armed robberies and kidnappings (i.e., those which occurred in Richland and Lexington Counties). It further appears that the co-defendants were arrested shortly after the Lexington County robbery and kidnapping in possession of the pistol used and money taken. (App. 30). Cooper gave a statement to law enforcement implicating Thompson in the Richland and Lexington robberies and kidnappings. On November 12, 1998 a search warrant was executed at Thompson's residence. (Traverse, Ex. 9).

Thompson had worked at one of the Sleep Inns until shortly before the robbery. A safe was stolen which contained Thompson's final pay check from Sleep Inn. During the search, this check was seized as evidence. Further, a purple Crown Royal bag, similar to one used in the robberies, was also seized. (App. 31-32).

Apparently, Thompson was at some point released on bond. He was originally represented on the Lexington County cases by the Lexington County Public Defender. On April 15, 1999 the

Public Defender was relieved and Thompson was represented by Tara D. Anderson, Esquire. (Traverse, Ex. 10).

Apparently acting alone, Thompson committed the armed robberies and kidnappings in Berkeley and Charleston counties. It further appears that Thompson, familiar with Sleep Inn policies, knew he could inspect a room prior to committing to rent. He did this at both locations. Prior to the Charleston County robbery and kidnapping, Thompson used a financial transaction card belonging to his mother who lived in the Columbia area to inspect a room. This lead caused Charleston officers to contact Richland County authorities to see if similar crimes had been committed. The cases from the Midlands were then linked to the robbery kidnappings in Berkeley and Charleston. The victims identified Thompson from photo spread lineups (App. 34 and 174-184). Thompson was arrested on the Berkeley County charges on May 18, 2000. (Supp.App. 8).

Steve Davis, Esquire was retained to represent Thompson on the charges from Berkeley County. Aware of Thompson's multi-county charges, he obtained the discovery from each jurisdiction. The Berkeley County cases were the first to be scheduled for trial. On February 20, 2001 the Solicitor wrote Mr. Davis advising of a proposal to resolve all the cases with twenty-five year concurrent sentences. The Solicitor noted that if convicted of two of the incidents Thompson would be facing life imprisonment without parole. Additionally, the Solicitor advised that if Thompson elected to go to trial in Berkeley County he would attempt to introduce evidence of the Charleston County robbery and kidnapping pursuant to State v. Lyle, 125 S.C. 406, 118 S.E.2d 803 (1923). Mr. Davis discussed the letter with Thompson. (App. 177-178). The guilty pleas to all the robberies and kidnappings were entered on May 2, 2001 in Berkeley County.

Thompson filed a direct appeal through the South Carolina Office of Appellate Defense.

(App. 52). The South Carolina Court of Appeals vacated Thompson's kidnapping and armed robbery convictions from Charleston County because, even though Thompson orally waived his right to grand jury presentment on those indictments, he did not do so in writing.[1] The remaining convictions were affirmed. State v. Thompson, Op.No. 2003-UP-252 (S.C.Ct.App. filed April 3, 2003). (App. 60).

Thompson then filed an application for post-conviction relief ("PCR") in Berkeley County challenging his remaining convictions. (App. 87). Respondents moved to dismiss alleging that the application was untimely pursuant to S.C.Code Ann. § 17-24-45(a). (App. 62). The motion was denied (App.78), and Respondents filed an Amended Return. (App. 80).

An evidentiary hearing was held on October 27, 2005, in Berkeley County. (App. 95). Thompson was represented by Theresa N. Johns, Esquire. Thompson's motions to continue his hearing and to relieve Ms. Johns were denied. The hearing began with Thompson calling his trial attorney, Mr. Davis, as a witness. He was subject to full examination. After Mr. Davis' testimony was received, he was excused subject to recall after Thompson's testimony. (App. 165-166). The Court then adjourned for lunch. During the break, Thompson had a medical problem and the case had to be continued. Respondents indicated that they had no witnesses unless Mr. Davis had to be recalled. Several exhibits were introduced into the record.

The court attempted to reconvene the evidentiary hearing by teleconference on December 13, 2005. Thompson, his attorney and the attorney for Respondents were at Broad River Correctional Institution ("BRCI") in Columbia. The PCR judge and the court reporter were in Charleston. The hearing began, but had to be recessed "(d)ue to court reporter difficulties." (Supp.App. 5).

The hearing resumed on February 22, 2006 in Charleston. (Supp.App. 1). The PCR judge

---

[1] It appears that Thompson has not been tried or pled guilty to the Charleston County cases.

4

summarized the previous proceedings including the aborted attempt from BRCI. (Supp.App. 4-6). The court concluded that "we're starting from scratch" with respect to Thompson's testimony. (Supp.App. 7). The testimony of Thompson and an investigator hired by Mr. Davis, Wayne Freeman, were taken. At the conclusion of the hearing, the court stated extensive reasons why Thompson had not shown he was entitled to relief. (Supp.App. 93-113). The court issued a written order of dismissal on march 24, 2006. (App. 189).

An appeal was filed by way of a Johnson[2] petition for writ of certiorari through the South Carolina Commission on Indigent Defense in the South Carolina Supreme Court arguing that defense counsel was constitutionally ineffective. Thompson filed a *pro se* brief which is not contained in the record filed by Respondents. However, a copy of the *pro se* brief is attached to Thompson's Roseboro response. (Traverse, Ex. 1). The petition for writ of certiorari was transferred to the South Carolina Court of Appeals which denied it on May 22, 2008.

### Grounds for Relief

I.  Ineffective Assistance of Counsel.

    A.  Counsel did not inform petitioner of "full consequences" of his guilty plea agreement.

    B.  Counsel failed to interview witnesses.

    C.  Counsel failed to withdraw guilty plea.

    D.  Counsel failed to apprise himself of controlling law/caselaw as it pertains to critical aspect of guilty plea, promised operation, failure to perfect direct appeal, withholding discovery.

---

[2]Johnson v. State, 364 S.E.2d 201 (S.C. 1988); see also Anders v. California, 386 U.S. 738 (1967).

   E. Counsel failed to move for suppression, investigate third parties.

II. Involuntary, Unknowing and Unintelligent Guilty Plea

   A. Petitioner unknowingly, unintelligently and involuntarily plead guilty to an invalid plea agreement that does not perform its relied upon operation. Petitioner was lied to and misinformed by counsel and the State to obtain the guilty plea.

III. Breach of Plea Agreement

   A. The State breached specific promises encompassed by the plea agreement. Petitioner relied upon these promises detrimentally. Petitioner received no benefits and the State vindictively pursued a course of action it promised it would not.

IV. Due Process Violation.

   A. Denied Access to the courts, denied preliminary hearing, breach plea agreement, misrepresentation of plea agreement, lied to and tricked into plea agreement to an invalid plea, waiver of rights without knowing full understanding of circumstances, omission of PCR testimony and exhibits by PCR court, closing hearing and preventing open courts access by public. Counsel affirmly advised petitioner to enter plea agreement to an invalid plea agreement.

These are essentially the same grounds raised and rejected in the state courts. Respondents make no argument that Thompson's claims are untimely or procedurally barred.

## Motions to Expand Record

Thompson filed motions to expand the record on January 14 and 29, 2009. By these motions he seeks a copy of a transcript from the BRCI hearing (which apparently does not exist), a copy of exhibits discussed during that hearing, visitor logs from BRCI for the day of the hearing and for another day when an investigator visited him, and the *pro se* brief he filed in connection with the

petition for writ of certiorari filing denial of his PCR.[3] Respondents have not responded to Thompson's motions.

Habeas Rule 5 requires a respondent to furnish relevant portions of the state court record including transcripts and briefs from the state court proceedings. Habeas Rule 6 allows a party to engage in discovery upon a showing of good cause. Habeas Rule 7 allows for the expansion of the record if the petition is not dismissed.

As discussed above, the record before this Court indicates that the BRCI hearing was not recorded because of technical difficulties encountered by the court reporter. When the hearing was resumed on February 22, 2006, the PCR court indicated that they would be "starting from scratch." The record shows that the exhibits discussed during the BRCI hearing were apparently faxed to the PCR court, but the court did not have them at the hearing on February 22. Thompson's PCR attorney mentioned the exhibits at the later hearing but apparently had not decided to put them into evidence and they were never made a part of the record. (Supp.App. 82-83).[4]

---

[3]As noted above, a copy of the *pro se* brief is attached to Thompson's Traverse.

[4]In his Roseboro response, Thompson argues that he testified at the BRCI hearing concerning Cooper's recantation of the statement implicating him in the Richland and Lexington County robberies and kidnappings. (Traverse, p. 5). He argues that had Mr. Davis interviewed Cooper, he would have learned that Cooper would not have testified against him. Thompson attaches what appears to be a interview of Cooper by a private investigator, James Harrison, on December 17, 2004 during which he stated that the statement he gave the police on November 11, 1998 implicating Thompson was false. (Traverse, Ex. 2). Presumably these are the documents which were telefaxed from BRCI to the PCR judge. However, by the time the hearing was resumed on February 22, 2006, Thompson had decided not to pursue this claim. Thompson offered no testimony on the issue and the documents were not made a part of the record. Thompson's PCR counsel stated that "some documents that were faxed over on this case...I strategically chosen (sic) not to enter into evidence...." (Supp.App. 82). The PCR court did not address any claims relating to Cooper's recantation. Thompson raised the issue as a violation of South Carolina procedure and abuse of discretion by the PCR court in his *pro se* brief following denial of his PCR. (Traverse, Ex. 1, pp. 15-

Thompson has not shown good cause to engage in discovery or to seek to expand the record. He had the opportunity to present his testimony and any exhibits he wished on February 22. Thompson has not shown the relevance of obtaining the visitor logs from BRCI. The present record is sufficient to analyze the state court's treatment of his claims. It is recommended that Thompson's motions to expand the record be **denied**.

## Discussion

Since Thompson filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state-court

---

[4](...continued)
18).

8

> decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was

9

prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of

effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

The PCR court began its discussion by recognizing that Thompson's stated claims were in essence a claim of ineffective assistance of trial counsel in connection with the guilty plea and that Thompson's testimony was not credible while the testimony of Mr. Davis and Mr. Freeman was credible. The court then applied the standards of Strickland and Hill.

Thompson argues that Mr. Davis was ineffective in investigating the Berkeley County charges. An attorney has a duty to make a reasonable factual and legal investigation to develop appropriate defenses. Sneed v. Smith, 670 F.2d 1348 (4th Cir. 1982). The reasonableness of the investigation is evaluated by the totality of the circumstances facing the attorney at the time. Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991), *cert. denied*, 505 U.S. 1230 (1992). The Courts recognize limits to investigation based on time, resources, and relevance and conclude that "Strickland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." Green v. French, 143 F.3d 865, 892 (4th Cir. 1998), *abrogated on other grounds* by Williams v. Taylor, 529 U.S. 362 (1998). A decision not to investigate a particular avenue of defense is assessed by the same standard of "reasonableness in all

11

the circumstances" by which an attorney's performance is measured in other areas. Strickland, 466 U.S. 690-91. A petitioner asserting a claim of ineffectiveness of counsel in failing to investigate must make a showing that the failure was prejudicial. Generally, the failure to investigate and present a potential alibi witness supports a claim of ineffective assistance of counsel. However, at the PCR hearing, the petitioner must present evidence establishing what the witness would have said at trial. Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990), *cert. denied*, 499 U.S. 982 (1991).

Thompson asserts that Mr. Davis failed to properly investigate an alibi defense. The record shows that Mr. Davis hired an investigator (Mr. Freeman) to attempt to verify a potential alibi defense. Thompson gave Mr. Davis two possible leads relating to his being at work in Columbia at the time of the Berkeley County robbery - his supervisor and time records. According to Mr. Freeman, the supervisor could not provide an alibi. (Supp.App. 75). The time records (App. 187) show that Thompson worked in Columbia on the date of the Berkeley County robbery and kidnapping but would have had sufficient time to commit the crimes and report to work. The PCR court found that Mr. Davis pursued all leads Thompson gave him to establish an alibi, but the efforts were not fruitful. (App. 200). Thompson did not produce any witnesses to establish an alibi at the PCR hearing.

Thompson also asserts that Mr. Davis was ineffective for failing to obtain a copy of a photograph of a footprint found on a counter at the Berkeley County Sleep Inn so that it could be compared to his shoe size. However, Thompson presented no evidence on this issue at the PCR hearing, but merely speculated in his testimony that such a comparison may have been helpful. The PCR court noted that Thompson failed to question Mr. Davis on this issue at the PCR hearing. (App. 198).

Thompson asserts that Mr. Davis failed to properly investigate his Richland and Lexington County cases. In this regard Thompson argues that Mr. Davis misrepresented that he had contacted the Lexington County Public Defender about his case. However, the PCR court, crediting Mr. Davis' testimony, found as fact that he conferred with Thompson's Lexington County counsel.[5]

Thompson also appears to argue that Mr. Davis incorrectly advised him that evidence of the Charleston County robbery and kidnapping could be introduced into evidence at the Berkeley County trial pursuant to Lyle. The record shows that the Solicitor notified Mr. Davis of its intent to use such evidence "to prove a common scheme or plan as well as the identify of Mr. Thompson as the perpetrator of the Berkeley County charges." (App. 178). The PCR court found that Mr. Davis showed Thompson the Solicitor's letter and gave him a copy of the Lyle decision. Thereafter, the issue was fully discussed. The PCR court credited Mr. Davis' testimony that he told Thompson that it was likely that the Lyle evidence would be admitted at trial. (App. 195). The PCR court found that Mr. Davis was not ineffective for failing to obtain a pretrial ruling on the admissibility of the Lyle evidence, because under South Carolina procedure the trial judge would make the ultimate ruling. (App. 202). (*See* State v. Hill, 331 S.C. 94, 501 S.E. 2d 122 (1998) (Ruling on a motion *in limine* prior to trial is not a final adjudication and is subject to change during trial. Objection must be made when evidence is offered at trial to preserve the issue.) Thompson has not shown that the Lyle evidence would have been ruled inadmissible.

## **Conclusion**

Based upon a review of the record, it is recommended that Petitioner's motions to expand the

---

[5]Thompson has submitted a letter from the Lexington County Public Defender which indicates that Mr. Davis did not contact her office. (Traverse, Ex. 13). However, by the time Mr. Davis was retained, Tara Anderson, Esquire represented Thompson on the Lexington County cases.

13

record be **denied**, and that Respondents' motion for summary judgment be **granted**.



                                                                  Joseph R. McCrorey
                                                                   United States Magistrate Judge

May 14, 2009
Columbia, South Carolina

                **The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).