# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

CLIFFORD THOMPSON, #274805,  )
                             )
                             )    CIVIL ACTION NO. 3:08-2794-HMH-JRM
            Petitioner,      )
                             )
                             )
v.                           )    **REPORT AND RECOMMENDATION**
                             )
JON OZMINT, SC Department    )
of Corrections;             )
WARDEN OF BROAD RIVER        )
CORRECTIONAL INSTITUTION,    )
                             )
            Respondents.     )
_____)

      Petitioner, Clifford Thompson ("Thompson"), is an inmate at the South Carolina Department of Corrections serving a sentence of twenty-five years imprisonment for a series of armed robberies and kidnappings. He filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 8, 2008. Respondents filed a return and motion for summary judgment on December 12, 2008. The undersigned issued a Report and Recommendation on May 14, 2009 recommending that Respondents' motion for summary judgment be granted. The motion was granted by order of the Honorable Henry M. Herlong, Jr., Senior United States District Judge, dated July 9, 2009.

      Thompson sought review by the Fourth Circuit Court of Appeals. The order of the District Court was vacated with respect to two issues, and the case was remanded for further proceedings. *See* Thompson v. Ozmint, 2010 WL 3069858 (D.S.C.) (unpublished). Pursuant to an order of August

1

25, 2010, Respondent filed a supplemental brief on October 8, 2010. Thompson filed replies on December 28, 2010 and January 6, 2011.

A full description of the background and state court procedural history of Thompson's cases is contained in the Report and Recommendation and Judge Herlong's order and will not be repeated here. In summary, Thompson pled guilty on May 2, 2001 in Berkeley County to a string of armed robberies of motels and related kidnappings which occurred in Richland, Lexington, Berkeley, and Charleston Counties between August of 1998 and March of 2000. On direct appeal, the South Carolina Court of Appeals vacated the Charleston County convictions because Thompson did not waive his right to grand jury presentment in writing on those indictments. The remaining convictions were affirmed. *See* State v. Thompson, Op.No. 2003-UP-252 (S.C.Ct.App. filed April 3, 2003).

The post-conviction relief ("PCR") process was complicated by Thompson's medical problems and transcribing issues, which resulted in three separate hearings. The PCR application was dismissed and a Johnson[1] petition for writ of certiorari was filed. Thompson filed a *pro se* brief. The petition for writ of certiorari was denied by the South Carolina Court of Appeals on May 22, 2008.

In vacating this Court's order denying Thompson's petition for a writ of habeas corpus, the Fourth Circuit identified two issues warranting consideration on remand:

1.  Whether the trial court's lack of jurisdiction over two counts of conviction resolved by Thompson's plea agreement rendered the plea agreement involuntary?

2.  Whether trial counsel was ineffective for negotiating and recommending said plea agreement?

---

[1] Johnson v. State, 364 S.E.2d 201 (S.C. 1988).

The Fourth Circuit also instructed that this Court should address "whether the specified claims are procedurally defaulted and, if not, the merits of Thompson's claims."

**A. Procedural Bar**

The first task mandated by the Fourth Circuit is determining "whether the specified claims are procedurally defaulted." Respondent argues that since the specified claims were not raised before Thompson filed his *pro se* brief in the South Carolina Supreme Court in addition to his attorney's Johnson petition following denial of his PCR application, those claims are procedurally barred and should not be considered by this Court.[2] The burden of pleading and proving that a claim is procedurally barred rests with the Respondent. Jones v. Sussex I State Prison, 591 F.3d 707, 716 (4th Cir. 2010).

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

**1.     Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted

---

[2]It appears that Respondent first took this position in the Fourth Circuit after the Court identified the grounds for relief now at issue.

unless it appears that

>   (A)  the applicant has exhausted the remedies available in the courts of the State; or
>
>   (B)(i)  there is either an absence of available State corrective process; or
>
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. *See* O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to

state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). *See* S.C. Code Ann. § 17-27-10 *et seq*. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45. A PCR applicant is also required to state all of his grounds for relief in his application. *See*, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007). In Bostic v. Stevenson, 589 F.3d 160, 162-65 (4th Cir. 2009), the Fourth Circuit held that, prior to the decision of the South Carolina Supreme Court in Marlar, that South Carolina courts had not consistently enforced a procedural bar based on the PCR applicant's failure to file a motion pursuant to Rule 59(e). Therefore, for matters in which the PCR court ruled prior to Marlar (i.e., November 5, 2007), this Court should not consider the failure of the applicant to file a Rule 59(e) motion to obtain a ruling on a properly raised issue as a procedural bar.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually

reached the merits of the claim.[3] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See* Rose v. Lundy, *supra*.

### 2. Procedural Bypass[4]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings,

---

[3] In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

[4] This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3.    Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.    Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty

of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), *cert. denied*, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) *cert. denied*, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5.     Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and

9

prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

Respondent concedes that the first ground for relief specified by the Fourth Circuit was fairly presented to the South Carolina Supreme Court in Thompson's *pro se* brief (Supp.Mem., p. 8) and does not contest that the second ground for relief was also fairly presented in his *pro se* brief (Supp.Mem., pp. 10-11). Instead, Respondent argues that the specified grounds for relief are procedurally barred because they were not presented in state court before Thompson filed his *pro se* brief in connection with the Johnson petition for writ of certiorari following denial of his PCR application. The undersigned disagrees.

The Fourth Circuit has specifically indicated in a habeas case filed in this District that a petitioner can exhaust habeas claims, and thereby avoid a procedural bar, by raising them for the first time in a *pro se* brief after counsel filed a Johnson petition for writ of certiorari following denial of his PCR application. *See* Norris v. South Carolina, 37 F.App'x 71 (4th Cir. 2002) (unpublished). The Fourth Circuit found that such claims were not procedurally barred but were subject to dismissal on the merits. The Fourth Circuit cited O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) in its exhaustion analysis which in turn cited In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 321 S.C. 563, 471 S.E.2d 454 (1990) in which the South Carolina Supreme Court declared "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies." The Fourth Circuit also cited Harris v. Reed, 489 U.S. 355, 265 n. 11 (1989) in the Norris decision. In Harris, the Supreme Court extended the "plain statement rule," i.e., "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state

court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Id.* at 263 citing Caldwell v. Mississippi, 472 U.S. 320, 327 (1985).

The undersigned concludes that Thompson's claims specified by the Fourth Circuit are not procedurally barred. Therefore, the merits of Thompson's claims as identified by the Fourth Circuit must be addressed.

**B. Standard of Review**

Since Thompson filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). *See* Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.

* * *

> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

Application of this standard in the present case is problematic because neither the South Carolina Supreme Court, nor the PCR court, engaged in a discussion of Thompson's claims. The claims were not raised in the PCR application, no evidence was offered by Thompson to support the claims, and the PCR court did not address them in the order of dismissal.

### C. "Involuntary Plea Agreement"

The second step required by the Fourth Circuit's order of remand is determining whether the trial court's lack of jurisdiction over the Charleston County indictments rendered the entire plea agreement involuntary.

As discussed in the earlier Report and Recommendation, Thompson was facing multiple charges in four different counties which occurred in 1998 and 2000. Chronologically, the Charleston Court offenses occurred last. Thompson was facing life imprisonment without possibility of parole ("LWOP") had he been tried separately and convicted because the second and subsequent convictions would have been second offenses of a "most serious offense" under South Carolina law. *See* S.C.Code Ann. § 17-25-45. On February 20, 2001, the State made an offer by letter of the Assistant Solicitor in Berkeley County to allow Thompson to plead guilty to charges from all four

counties, other charges were dismissed, with a recommended twenty-five year non-parolable sentence with all sentences to run concurrently. The plea was structured to dispose of the cases from the four counties with Thompson avoiding an LWOP sentence. Thompson pled guilty pursuant to the plea agreement on May 2, 2001. Thereafter, Thompson initiated his direct appeal which resulted in the Charleston County convictions being overturned. Those charges appear to remain pending.

To be effective, a defendant's plea of guilty must be made knowingly, intelligently, Boykin v. Alabama, 395 U.S. 238, 242 (1969), and voluntarily, North Carolina v. Alford, 400 U.S. 25, 31 (1970). Plea bargaining is a universally accepted practice. Blackledge v. Allison, 431 U.S. 63, 71 (1977) and Santobello v. New York, 404 U.S. 257 (1971). Issues frequently arise when there is an alleged breach of the plea agreement by either the defendant or the prosecution, or where the terms of the plea agreement are ambiguous.

In the present case, neither Thompson nor the State breached the plea agreement. Further the terms of the plea agreement are unambiguous. All the material promises made by the State in the plea agreement were honored by the sentencing court. The plea agreement was frustrated when Thompson exercised his right to direct appeal and was successful in having the Charleston County convictions vacated. However, because all sentences were ordered to run concurrently, the main objective of the plea agreement (avoiding LWOP) remains intact except the Charleston County convictions are pending. If Thompson were tried and convicted on these charges it would appear that he could be subjected to South Carolina's LWOP penalty.

Generally, a plea agreement is considered to be a contract between the criminal defendant and the government. Puckett v. United States, __ U.S. __, 129 S.Ct. 1423, 1430 (2009), and traditional contract principles are used for interpretation of the plea agreement. Plaster v. United States, 720

13

F.2d 340 (4th Cir. 1983) and United States v. Wade, 936 F.2d 169 (4th Cir. 1991).

The Third Circuit addressed an analogous situation in McKeever v. Warden SCI-Graterford, 486 F.3d 81 (3d Cir. 2007). In that case the petitioner pled guilty to a number of drug charges and two counts of violation of the Pennsylvania Corrupt Organizations Act ("PACOA") pursuant to a plea agreement. Thereafter, the Supreme Court of Pennsylvania ruled that PACOA did not apply to individuals operating wholly illegitimate enterprises. Petitioner collaterally attacked his convictions in state court arguing that his guilty plea should be rescinded. After failing to obtain relief in state court, petitioner filed a § 2254 petition. The District Court granted his petition in part and allowed the State 180 days to resentence petitioner to remove the sentences for PACOA. He was resentenced and various motions were denied, including a motion to withdraw his guilty plea. The corrected sentence was ultimately affirmed by the Supreme Court of Pennsylvania.

Petitioner then appealed to the Third Circuit arguing that his guilty plea violated due process, and that the appropriate remedy was recision of his guilty plea in its entirety. The Court, applying contract principles to the dispute involving the plea agreement, held that the mutual mistake was one of law, and not of fact, did not have a material effect on the plea agreement. The same is true in the instant case. There was no mistake of fact. The mistake of Thompson and the State was one of law, i.e., the sufficiency of an oral waiver of Grand Jury presentment. The court held that "even if the PACOA counts informed [petitioner's] bargaining position, and were the 'but for' cause of his decision to plead guilty, this does not rise to the level of materiality necessary to avoid the agreement in its entirety." *Id.* at 86-87.

Adopting this rationale, the undersigned concludes that Thompson has not shown that his right to due process will be violated absent voiding his plea agreement in its entirety. The primary

objective of the plea agreement, avoiding LWOP, may still be accomplished by requiring the State to allow Thompson to plead guilty to the Charleston County charges with the understanding that they would not constitute subsequent offenses or dismissing those charges. This process would be similar to the ruling of the District Court in McKeever, allowing the state court to correct the error.

### D. Ineffective Assistance of Counsel

The last issue for analysis based on the order of the Fourth Circuit is whether trial counsel was ineffective for negotiating and recommending the package plea agreement covering offenses in four separate counties.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that,
> but for counsel's unprofessional errors, the result of the proceeding

> would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Although not focused on the exact issue now before this Court, the PCR court made extensive findings concerning the effectiveness of trial counsel relating to the guilty plea. (App. 189-204). The PCR court found that "trial counsel was fully prepared for trial and when the alibi defense did not materialize, trial counsel did what he could to salvage the life of his young client." (App. 199). The PCR court also found that "(t)he case presented a choice to the Applicant of accepting the plea offer or proceeding to trial and exposing himself to possible sentences of life without parole." (App. 202).

These findings of the PCR court provide the appropriate context of the plea negotiations. Thompson admitted his guilt and orally stated that he wished to waive indictment by the Charleston County Grand Jury. Thompson is now attempting to use a procedural error to void his plea agreement. The undersigned concludes that Thompson has not shown that his attorney was ineffective in negotiating a favorable plea agreement nor in failing to raise the jurisdictional issue.

## Conclusion

Based on the foregoing, it is recommended that the Petition be **dismissed** without an evidentiary hearing.

                                                                    _____
                                                                    Joseph R. McCrorey
                                                                    United States Magistrate Judge

April 14 , 2011
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).